UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM CARRERO | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-00650 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| CITY OF CHICAGO | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Carrero, a City of Chicago employee, challenges the City's COVID-19 vaccine mandate as the City applied it to him. Specifically, Carrero alleges in his Third Amended Complaint [26] that the City violated: (1) the First Amendment's Free Exercise Clause; (2) the Fourteenth Amendment's Equal Protection Clause; (3) the Illinois Health Care Right of Conscience Act, 745 ILCS 70/5; (4) the Illinois Religious Freedom Restoration Act, 775 ILCS 35/15; (5) the Illinois Human Rights Act, 775 ILCS 5/2-102(E-5); and (6) Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Before the Court is the City's motion to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part the City's motion [36].

**BACKGROUND**

1. *Carrero*

The following allegations are taken as true for present purposes. Carrero has been employed as a Tree Trimmer for the City of Chicago since December 1998. Carrero is a Christian. His particular form of Christian belief conflicts with his receiving the vaccine for COVID-19 because, he says, "God [is] his healer and [] some of the ingredients of the vaccine are derived from an aborted fetus," which contradicts the Bible's commandment that "thou shall not kill."

1

Although Carrero has never received the COVID vaccine, he contracted COVID in September 2020. He was hospitalized for nine days and was fortunate to fully recover with the help of medical intervention. As a result, he claims he now has natural immunity against COVID.

2. *The City's Response to COVID*

In response to the COVID pandemic, the Illinois governor and Chicago mayor issued "stay-at-home" orders in March 2020. Carrero was exempt from these orders as an "essential worker." The pandemic continued through 2021, but around March 2021, vaccines against COVID became widely available. For the reasons described above, Carrero did not get the COVID vaccine.

The City announced a vaccination policy ("the Policy") for its employees on August 25, 2021. The Policy, still applicable today, provided: "City of Chicago employees must, as a condition of employment, be fully vaccinated against COVID-19 effective October 15, 2021." The Policy defined "fully vaccinated" to mean that an employee was "two weeks past the second dose of a two-dose mRNA vaccine (Pfizer, Moderna) or two weeks past a single dose of the Johnson & Johnson vaccine."

The Policy includes exemptions: "Employees can apply for medical or religious exemption from this policy. Such requests will be reviewed by the Department of Human Resources on a case-by-case basis." As part of the religious exemption process, the City requires employees to obtain a signed "affirmation of belief" from their religious leader. The "affirmation of belief" Carrero submitted is pictured below:[1]

---

[1] Carrero attaches three exhibits to his motion to dismiss. Each has to do with his application for religious exemption. (Dkt. 40-1, 40-2, 40-3.) Because these exhibits simply elaborate on the allegations in Carrero's complaint, the Court will consider them for the purpose of the instant motion. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("A plaintiff [] has much more flexibility [than a moving party] in opposing a Rule 12(b)(6) motion. … In the district court [] a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove.") (internal citations omitted). Carrero's "affirmation of believe" is attached to his opposition brief as Exhibit C.

> **SECTION III: Religious or Spiritual Leader – Complete this section**
>
> **Affirmation of belief:** *I have met with and provided religious or spiritual counsel to the above employee regarding their sincerely held religious beliefs and practices. I affirm that this employee is a member of our religious organization. I further affirm that these beliefs regarding any immunization or immunizing agent are in line with the tenets of our religious or spiritual faith, teachings, and/or practices.*
>
> Religious or Spiritual Leader Name *(Printed)*
>
> Religious or Spiritual Leader Signature
>
> Date (MM/DD/YYYY):
>
> Telephone #:
>
> Email:
>
> Religion: Christian
>
> Return Certifications to:

The Policy does not allow for alternative means to satisfy its purpose of protecting against the spread of COVID, such as face coverings, personal protective equipment, or monitoring and testing. The Policy does not provide exceptions for natural immunity and does not require vaccine "boosters." The City has allowed approximately 2,800 unvaccinated employees to continue working, 1,700 of whom refused to disclose their vaccination statuses.

3. *Carrero's Application for Exemption*

On September 30, 2021, about two weeks before the vaccine requirement became effective, Carrero submitted a religious exemption request. He included in his request a narrative of his conflicting religious beliefs—again, that God is his healer and some ingredients in the vaccine are derived from aborted fetuses, contrary to the Bible's command that "thou shall not kill." Carrero did not, however, provide an "affirmation of belief" from his pastor because his church had a policy of not signing such forms. Instead, Carrero submitted the incomplete form pictured above and told the City that he was part of a 15,000-member "mega church" whose pastor, as a matter of policy, did not personally meet with his members to sign such affirmations.

The City denied Carrero's request for exemption on December 2, 2021. It reasoned that Carrero failed to provide sufficient supporting information, specifically, an "affirmation of belief" from his pastor. Carrero wrote back to the City explaining why he could not get an affirmation

3

from his church leader and stating that "I can submit that paperwork just personally signed by myself or someone else close to me that can attest to my beliefs … [p]lease advise." (Dkt. 40-2.) The City did not respond. Then, on January 13, 2022, Carrero was put on "no pay status" and told not to clock in. Carrero remains unvaccinated and on "no pay status" to this day. Carrero says he would have complied with any reasonable alternatives to vaccination.

    4. *The Policy's Contested Effectiveness*

Carrero alleges numerous facts to challenge whether the Policy accomplishes its purpose, at least in his case, including for example: (1) Carrero worked outdoors and COVID is almost never spread outdoors; (2) COVID vaccines were not designed to prevent the transmission of the disease; (3) since January 2022, organizations across the U.S. have lessened their COVID restrictions as cases have dropped; (4) the Center for Disease Control and Prevention ("CDC") significantly revised its COVID prevention recommendations in August 2022; and (5) health experts have opined that the effect of a vaccine wanes significantly in just a matter of months.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

    *1. Free Exercise Clause*

Carrero alleges that the City violated his First Amendment right to exercise his Christian beliefs. The First Amendment applies to the City through the Fourteenth Amendment. *See Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 707 (7th Cir. 2003). It provides that "Congress shall make no law … prohibiting the free exercise" of religion. U.S. Const. amend I. "To merit protection under the Constitution, 'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others.'" *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 606 (7th Cir. 2022) (citing *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)). According to Carrero, the City's vaccine mandate required him to either compromise his religious beliefs or face the consequences of being put on "no pay" status.

The parties agree that the Policy is constitutional on its face. The Seventh Circuit has already said as much. *See id.* Instead, Carrero challenges the Policy (in particular, the exemption process) as applied to him. The Seventh Circuit was explicit that its *Lukaszczyk* opinion did not address such a challenge. *See, e.g., id.* at 607 ("On paper, the City of Chicago provides religious exemptions for its vaccination policy. Judge Lee gave the *Troogstad* plaintiffs an opportunity to develop the factual record on this point, but they declined to do so."); *id.* ("The [*Lukaszczyk*] plaintiffs should have gathered facts and created a record detailing any wrongful denials of requests for religious exemptions. Instead, they made a facial challenge, which ignored the text of the policy's religious exemption and the status of the plaintiffs' exemption requests."). Carrero, in contrast, alleges that he applied for a religious exemption that the City denied, and wishes to develop a record to prove that. The Court therefore must address the Policy as it was allegedly applied to Carrero.

5

"[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 593 U.S. ––––, 141 S. Ct. 1868, 1876, 210 L.Ed.2d 137 (2021) (citing *Emp. Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 1877 (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. ––––, 138 S.Ct. 1719, 1730–1732, 201 L.Ed.2d 35 (2018); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)). In *Fulton*, the Supreme Court described two instances in which a law would not be generally applicable: (1) "if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions,'" and (2) "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* (citations and quotations omitted). "Neutrality and general applicability are interrelated, and … failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Lukumi*, 508 U.S. at 531. If a law or its application is not neutral or generally applicable, the Court must analyze it using strict scrutiny. *Fulton*, 141 S. Ct. at 1881.

  a. Neutrality

Carrero argues that the Policy is not neutral as applied to him. At the outset, the Court notes that the Seventh Circuit has not addressed the text of the City's religious exemption application. *See Lukaszczyk*, 47 F.4th at 607 ("[plaintiffs] made a facial challenge, which ignored the text of the policy's religious exemption and the status of the plaintiffs' exemption requests"); *id.* at 593 ("Although the plaintiffs could have presented some forceful legal arguments, they have failed to develop factual records to support their claims."). Carrero has put the application of the religious exemption before the Court.

6

In the absence of controlling Seventh Circuit precedent, Carrero cites *Kane v. De Blasio*, 19 F.4th 152, 168 (2d Cir. 2021), in support of his argument. The vaccination policy at issue in *Kane* provided that "[e]xemption requests shall be considered for recognized and established religious organizations" and that "requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature." *Id.* The Second Circuit took issue with the policy's neutrality because "[d]enying an individual a religious accommodation based on someone else's publicly expressed religious views—even the leader of her faith—runs afoul of the Supreme Court's teaching that '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds.*'" *Id.* (citing *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)) (emphasis in original).

The Court finds the Second Circuit's reasoning in *Kane* persuasive, and it is hard to see how the City's Policy exemption materially differs from the one at issue in *Kane*. Like the *Kane* policy, the City's Policy permits exemptions only for members of "religious organizations" whose religious leader says the member's beliefs "are in line with the tenets of our religious or spiritual faith." The City argues that this language is merely meant to confirm the sincerity and religious nature of the applicant's belief. That likely would be permissible. But the Court disagrees with the City's interpretation. Rather, the language in the "affirmation of belief" tests only whether an applicant's religious beliefs align with the tenets of his or her organized religion. Even if religious adherents differ in the interpretation of their creed, it is not for the City or the Court to determine whose interpretation is correct. *See Frazee v. Illinois Dep't of Emp. Sec.*, 489 U.S. 829, 833, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989) (noting that "disagreement among sect members" over whether work was prohibited on the Sabbath had not prevented the Court from finding a free exercise violation based

on the claimant's "unquestionably ... sincere belief that his religion prevented" him from working) (citing *Thomas*, 450 U.S. at 714); *cf. Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) ("a clergy verification forms an attenuated facet of any religious accommodation regime because clergy opinion has generally been deemed insufficient to override a prisoner's sincerely held religious belief").

The City attempts to distinguish *Kane* by arguing that "unlike the defendant in *Kane*, here, Plaintiff did not and cannot allege that the City took into account the religious views of faith leaders. Rather, the focus of the 'affirmation of belief' was on the employee's own sincerely held religious beliefs and practices." (Dkt. 41 at 3.) But the City omits that its "affirmation of belief" requires more than merely affirming whether the applicant's own beliefs are sincerely held. It requires the applicant's religious leader to affirm that the applicant's beliefs "are in line with the tenets of our religious or spiritual faith." At this point of the proceedings, it is reasonable to infer that the City denied Carrero's application because his religious leader did not confirm the *validity* of his belief.

Carrero's beliefs may not be sincerely held or religious in nature. The City is free to challenge those points in the exemption process and in this case. *See Childs v. Duckworth*, 705 F.2d 915, 921 n.7 (7th Cir. 1983) ("Courts generally make two primary inquiries to determine whether a given belief is religious for First Amendment purposes. They examine whether (1) a given belief is "sincerely" and "meaningfully" held by the claimant and (2) it "occupies a place in the life of its possessor parallel to that filled by the Orthodox belief in God.") (citing *United States v. Seeger*, 380 U.S. 163, 183, 85 S.Ct. 850, 862, 13 L.Ed.2d 733; *Int'l Soc'y for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 440 (2d Cir.1981)). For instance, some stated beliefs might be "so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause." *Thomas*, 450 U.S. at 715. And "a refusal to be vaccinated that is grounded in the belief that vaccines cause harm is essentially rooted in medical, not religious concerns." *Guthrie-Wilson v. Cook Cnty.*, No.

8

1:23-CV-362, 2023 WL 8372043, at *2 (N.D. Ill. Dec. 4, 2023) (Shah, J.) (citing *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017)). But the City may not single out religious beliefs merely because they do not conform to the tenets of a religion as interpreted by a spiritual leader. Because that is what Carrero alleges the City's Policy did to him, he has sufficiently pled that the Policy's exemption language is not neutral as applied to him.

      b. *General Applicability*

Carrero also argues that the policy is not generally applicable as applied. Carrero again urges the Court to follow *Kane*, 19 F.4th 152. The facts in *Kane*, however, differ in important ways from those alleged by Carrero. There, focusing on the decision making by the arbitrators, the Second Circuit noted, "[s]ometimes, arbitrators strictly adhered to the Accommodation Standards. Other times, arbitrators apparently ignored them, such as by granting an exemption to an applicant who identified as a Roman Catholic, even though the Pope has expressed support for vaccination." *Id.* at 169. Here, Carrero does not allege that the City applied different standards to different applications for exemption. He alleges only that his application was rejected because he did not obtain an affirmation of belief from his religious leader.

Nevertheless, the Court finds the Sixth Circuit's opinion in *Dahl v. Board of Trustees of Western Michigan University*, 15 F.4th 728 (6th Cir. 2021), more persuasive on this issue.[2] Carrero alleges that he made a good faith attempt to comply with the exemption process by filling out all required information aside from the affirmation of belief. He explained why filling out the affirmation of belief would have been impossible for him and offered to provide the requested information through other means (by making an affirmation himself or by having another third party make such

---

[2] Notably, the Seventh Circuit addressed *Dahl* in its *Lukaszczyk* opinion, distinguishing it because "no plaintiff [in *Lukaszczyk*] that 'applied for and [was] denied an exemption from the City Vaccination Policy … made a good faith attempt to comply with the Policy's exemption process." *Lukaszczyk*, 57 F.4th at 606.

an affirmation). Carrero alleges that the City's Department of Human Resources reviewed his exemption request on a "case-by-case basis," Dkt. 26 ¶ 21, and denied it.

These allegations closely align his case with *Dahl*. In *Dahl*, the COVID policy at issue provided that "[m]edical or religious exemptions and accommodations will be considered on an individual basis." 15 F.4th at 733. The court held that this discretionary language "render[ed] the policy not generally applicable regardless of whether the University has granted any exemptions." *Id.* at 734 (citing *Fulton*, 141 S. Ct. at 1879 (the "creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given")).

Carrero alleges that the City could make individualized assessments of whether to grant religious exemptions on a "case-by-case basis" based at least on whether an applicant's religious leader would affirm the applicant's religious belief. Put differently, Carrero alleges that the City "passe[d] judgment upon or presuppose[d] the illegitimacy of [his] religious beliefs or practices" merely because he was unable to get his religious leader to affirm them. *Masterpiece Cakeshop*, 138 S. Ct. at 1731. At this stage, that is enough to allege that the Policy's exemption process was not generally applicable as it was applied in this case.

   c. *Strict Scrutiny*

Because Carrero has alleged the Policy's exemption as applied to him is not neutral or generally applicable, the Court must apply strict scrutiny. *See Fulton*, 141 S. Ct. at 1881. To survive strict scrutiny, a law "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531–32. "Stemming the spread of COVID–19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67, 208 L. Ed. 2d 206 (2020). Thus, the only issue in the present analysis is whether, based on Carrero's allegations, the City's Policy exemption was narrowly tailored to that compelling interest. *See Thomas*, 450 U.S. at 718 ("The state may justify an inroad on religious liberty by showing that it is

10

the least restrictive means of achieving some compelling state interest."); *see also Fulton*, 141 S. Ct. at 1881 ("Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so.").

Carrero argues that the City's decision to reject his exemption request based on the affirmation of belief requirement was not narrowly tailored to achieving its compelling interest in preventing the spread of COVID. Carrero provides a litany of allegations to support his contention, including that his outdoor work mitigated any contagion risks, his claimed natural immunity provided the same protections as a vaccine, COVID vaccines were not designed to prevent transmission of the disease, and masking and testing can comparably prevent the spread of the disease. Arguing only that rational basis review applies, the City makes no argument in its briefing that its exemption process survives strict scrutiny. Whether any of Carrero's allegations are true is an issue for a later stage of this litigation. At this point, Carrero has sufficiently alleged that the City did not choose the "least restrictive means" of achieving its objective in his specific case. *Thomas*, 450 U.S. at 718. The Court therefore denies the City's motion to dismiss as to Count I.

*2. Equal Protection Clause*

Carrero alleges that he is a Christian, but he does not allege that the City denied his exemption request because he is a Christian; he alleges that he was denied because of his idiosyncratic application. Nor does he allege that the City treated Christians differently than other people. Instead, Carrero argues that the City treated Carrero's individual exemption request differently because the City allegedly allowed many employees to keep working despite their refusal to disclose their vaccination statuses. (Dkt. 40 at 7–8.) The City responds, in part, by arguing that Carrero's claim fails because he has not identified the protected class at issue. The Court agrees.

"[T]he Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically

11

differently." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605 (2008). "This type of equal protection claim requires a plaintiff to show that 'defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class.'" *McCormick v. Chicago Transit Auth.*, No. 23 C 1998, 2023 WL 5608000, at *2 (N.D. Ill. Aug. 30, 2023) (Kennelly, J.) (citing *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020)). "[T]he class-of-one theory of equal protection," that is, that an individual plaintiff was arbitrarily singled out for disparate treatment, "does not apply in the public employment context." *Engquist*, 553 U.S. at 598.

Here, even viewed in the light most favorable to Carrero, Carrero's allegations do not support that the City discriminated against a definable class of people. Carrero alleges only that his disparate treatment was based on his unique application for exemption. He does not allege that the City treated other Christians, or even other religious people, as it treated him. And he does not allege that the City's denial of his exemption was based on his being a Christian. This is exactly the kind of class-of-one claim that the Supreme Court has rejected in the public-employment context. *Id.* The Court therefore grants the City's motion to dismiss as to Count II.

### 3. *Illinois Health Care Right to Conscience Act*

Section 13.5 of the Illinois Health Care Right to Conscience Act provides that "[i]t is not a violation of this Act ... to take any measures or impose any requirements ... intended to prevent contraction or transmission of COVID-19. It is not a violation of this Act to enforce such measures or requirements." 745 ILCS 70/13.5. Section 13.5 also states that it "is a declaration of existing law and shall not be construed as a new enactment." *Id.* The parties dispute whether Section 13.5, 745 ILCS 70/13.5, was actually a mere "declaration of existing law" such that it can be applied to Carrero's claim.

To determine whether Section 13.5 was a "declaration of existing law," in other words, a clarification of the statute, the Court must attempt to ascertain how the highest state court would

12

rule on the issue. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). If there is no precedent from the state's high court, the Court should look to decisions by the state's intermediate appellate courts "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

The Illinois intermediate appellate courts that have addressed this issue have held that Section 13.5 is a declaration of existing law. *See, e.g.*, *Glass v. Dep't of Corrs.*, 2022 IL App (4th) 220270, ¶¶ 14–24 (Ill. App. 4 Dist. 2022), *reh'g denied* (Apr. 27, 2022), (holding that Section 13.5 is an "interpretive aid" for the previously ambiguous sections of the Act); *Krewionek v. McKnight*, 2022 IL App (2d) 220078, ¶¶ 35–38 (Ill. App. 2 Dist. 2022), *appeal denied*, 210 N.E.3d 774 (Ill. 2023) (holding that Section 13.5 barred plaintiffs' Health Care Right to Conscience Act claim based on their termination for failure to obtain COVID vaccine); *see also Snyder v. Chicago Transit Auth.*, No. 22 CV 6086, 2023 WL 7298943, at *9 (N.D. Ill. Nov. 6, 2023) (Shah, J.) (applying Section 13.5 to dismiss plaintiff's claim challenging the Chicago Transit Authority's COVID vaccination policy).

The Court finds no reason to believe that the Illinois Supreme Court's disposition of the issue would differ from the Illinois appellate courts' holdings. Therefore, the Court holds that Section 13.5 bars Carrero's claim under the Illinois Health Care Right to Conscience Act and grants the City's motion to dismiss as to Count III.

    *4. Illinois Religious Freedom Restoration Act ("IRFRA")*

IRFRA provides that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15. The first part of the IRFRA analysis requires the Court to determine whether Carrero has

13

alleged a "substantial burden" on his exercise of religion. "[T]he hallmark of a substantial burden on one's free exercise of religion is the presentation of a coercive choice of either abandoning one's free exercise of religious convictions or complying with the government regulation." *Diggs v. Snyder*, 333 Ill. App. 3d 180, 194-95 (5th Dist. 2002). "[W]hether a burden is substantial … is ordinarily an issue of fact … whether a given burden is substantial depends on its magnitude in relation to the needs and resources of the religious organization in question." *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009) (citations omitted).

Carrero argues that the City's exemption process forced him to choose between abandoning his religious beliefs by taking the COVID vaccine or facing "no pay" status. The City responds that Carrero could have avoided the substantial burden by submitting a completed exemption form, and that the City eliminated any burden by providing a religious exemption. But the City's argument ignores that Carrero alleges he did submit an exemption request and that his exemption request was denied. The facts surrounding that denial need further development, so at this point it is reasonable to infer that the City's exemption denial imposed a substantial burden on Carrero's religion. Indeed, the distinction between the parties' arguments is illustrated in two recent decisions by another court in this district. *Compare Snyder*, 2023 WL 7298943, at *9–10 (finding that plaintiff adequately stated a claim under IRFRA where plaintiff's request for exemption was denied), *with Schneider v. City of Chicago*, No. 22 CV 1031, 2023 WL 8019434, at *1–3 (N.D. Ill. Nov. 20, 2023) (Shah, J.) (finding that employee failed to state a claim under IRFRA where plaintiff did not apply for and was not denied a religious exemption to COVID vaccine policy).

Given that Carrero has alleged a substantial burden, the Court turns to whether that burden was imposed "in furtherance of a compelling governmental interest" and using "the least restrictive means." 775 ILCS 35/15. Again, there is no dispute that "[s]temming the spread of COVID-19 is [] a compelling interest." *Cuomo*, 141 S. Ct. at 67. The only remaining issue, therefore, is whether

Carrero has plausibly alleged that the City's exemption process is not the "least restrictive means" of furthering its compelling interest.

As another court in this district recently explained in a similar case, "[t]he fact-specific circumstances of this case [] require [the City] to establish that its denial of [Carrero's] exemption was part and parcel of the 'least restrictive' policy that [the City] chose to achieve its asserted interest." *McCormick v. Chicago Transit Auth.*, No. 23 C 1998, 2023 WL 5608000, at *3 (N.D. Ill. Aug. 30, 2023) (Kennelly, J.) (denying motion to dismiss plaintiff's IRFRA claim). The City may be able to show that it had no other means of furthering its compelling interest. But for the reasons described in Section (1)(c) of this opinion, Carrero has plausibly alleged that the City's denial of his exemption request was not the least restrictive means available to prevent the spread of COVID. Therefore, the Court denies the City's motion to dismiss as to Count IV of the complaint.

    5. *Illinois Human Rights Act & Civil Rights Act*

The parties agree that the legal standard under the IHRA and Title VII is the same. *See also Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) ("[t]he analytical framework for [Title VII and the IHRA] is "essentially identical," and therefore we need not analyze them separately"). Title VII of the Civil Rights Act prohibits employers from discriminating against their employees based on religion. *See* 42 U.S.C. § 2000e-2. Title VII religious discrimination claims are evaluated under a burden-shifting framework. First, a plaintiff must make a prima facie case by showing that "(1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to the employer's attention; and (3) the religious observance or practice was the basis for the employee's discharge or other discriminatory treatment." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013) (quotation omitted). If an employee can make out a prima facie case, the burden shifts to the

15

employer to make a reasonable accommodation or to establish that any accommodation would cause the employer undue hardship. *Id.*

Whether an accommodation would cause an undue hardship, however, is an affirmative defense. *See id.* at 448. Generally, courts should not grant 12(b)(6) motions based on affirmative defenses, as "a plaintiff may state a claim even though there is a defense to that claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Moreover, the City does not argue at this stage that accommodating Carrero's request would have presented an undue burden. The Court therefore addresses only whether Carrero has adequately pled a prima facie case of religious discrimination.

The parties dispute only the third prong of the prima facie test. The City argues that Carrero has not alleged his exemption denial was based on his religion. Instead, the City contends, Carrero's exemption request was denied because he failed to complete the affirmation of belief, which is an essential part of the exemption process. The City cites EEOC Guidance to support its argument:

> [I]f an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, the employer would be justified in making a limited factual inquiry and seeking additional supporting information. An employee who fails to cooperate with an employer's reasonable requests for verification of the sincerity or religious nature of a professed belief, practice, or observance risks losing any subsequent claim that the employer improperly denied an accommodation.

U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, The Rehabilitation Act, and Other EEO Laws* at L.2.

Carrero argues that the City's rejection based on his inability to complete the affirmation of belief was itself based on his religion. In other words, Carrero argues that the City's supposed procedural rejection of his application was really based on his failure to prove the validity of his religious beliefs. Drawing all inferences in Carrero's favor, he states a claim under this theory.

16

The City's exemption process required Carrero to obtain confirmation from his religious leader that his beliefs "are in line with the tenets of [his church's] religious or spiritual faith." This goes beyond the EEOC's Guidance, which permits employers to request "verification of the sincerity or religious nature of a professed belief." As explained above, the distinction between the validity of a religious belief and the sincerity or religious nature of that belief is an important one. *See Adeyeye*, 721 F.3d at 448 ("The validity of what [a plaintiff] believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question … the truth of his concepts. But these inquiries are foreclosed to Government.") (citing *United States v. Seeger*, 380 U.S. 163, 184 (1965)). And as Carrero points out, the Seventh Circuit has been critical of similar clergy verification forms in different contexts. *See Koger*, 523 F.3d at 799.

Carrero alleges that he attempted to seek a religious exemption through the City's process in good faith. Although he could not obtain an affirmation of belief, he explained his reasons to the City and offered to demonstrate his sincerity and the religious nature of his beliefs by other means. From this, it is reasonable to infer that the City denied his request and put him on "no pay" status because his religious belief was invalid if it could not be confirmed by his church leaders. Accordingly, the Court denies the City's motion to dismiss as to Count V and VI.

6. *Illinois Tort Immunity Act*

The City finally argues that the Illinois Tort Immunity Act bars all of Carrero's claims for monetary damages. Specifically, the City argues that 745 ILCS 10/6-104(a) bars monetary damages for claims like Carrero's that are based on a public entity's public health policy decision. That section provides:

> Neither a local public entity nor a public employee is liable for an injury resulting from the policy decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if such decision was the result of the exercise of discretion vested in the local public entity or the public employee, whether or not such discretion was abused.

17

745 ILCS 10/6-104(a).

The City's argument, however, relies on an inapplicable section of the Tort Immunity Act. The Tort Immunity Act "must be strictly construed against the public entity seeking immunity," *Williams v. Miracle Ctr., Inc.*, 2022 IL App (1st) 210291, ¶ 30, 206 N.E.3d 1088, 1096 (Ill. App. 1 Dist. 2022), and the Court must read the statute as a whole and construe each provision "in connection with every other relevant section." *Vill. of Kirkland v. Kirkland Properties Holdings Co., LLC I*, 2023 IL 128612, ¶ 50, 221 N.E.3d 300, 313 (Ill. 2023) (citation omitted). Carrero's claims are based on a City employment policy as it was applied to him. The Tort Immunity Act contains two sections that potentially deal with such policies and their application. *See* 745 ILCS 10/2-103 ("A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."); 745 ILCS 10/2-201 ("a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused"). Indeed, Judge Shah recently addressed a case challenging the City of Chicago's COVID Public Health Order under 745 ILCS 10/2-103. *See Schneider*, 2023 WL 8019434, at *4 ("The Public Health Order is an 'enactment' and therefore the City is immune from damages caused by its adoption."). And numerous courts have addressed challenges to public employers' employment decisions under 745 ILCS 10/2-201. *See, e.g.*, *Taylor v. Bd. of Educ. of City of Chicago*, No. 18 C 7874, 2020 WL 5076718, at *6 (N.D. Ill. Aug. 27, 2020) (Kennelly, J.) (collecting cases addressing adverse employment decisions under Section 2-201), *aff'd sub nom. Taylor v. Bd. of Educ. of the City of Chicago*, No. 21-1359, 2021 WL 5985534 (7th Cir. Dec. 17, 2021); *Consolino v. Dart*, No. 17-CV-09011, 2019 WL 4450498, at *9–11 (N.D. Ill. Sept. 17, 2019) (Dow, J.) (same).

In contrast, although very few cases address Section 6-104(a), that section more plausibly applies to substantive public health acts (or failures to act), as its plain language would suggest, not

18

policy enactments or discretionary policy decisions such as hiring and firing. *See* 740 ILCS 10/6-104(a); *Missey v. City of Staunton, Ill.*, No. 08-3212, 2008 WL 4911877 (C.D. Ill. Nov. 13, 2008) (challenging public entities' failure to provide townspeople with pertinent information regarding bacteria contamination in water); *Taylor v. Bi-Cnty. Health Dep't*, 2011 IL App (5th) 090475, ¶¶ 23, 50, 956 N.E.2d 985, 992, 998 (Ill. App. 5 Dist. 2011) (noting that lower court held defendant was immune from liability for failure to administer vaccine under Section 6-104(a) of the Tort Immunity Act but declining to address the issue on appeal because it found no duty existed to plaintiff). The Court therefore finds, based only on the allegations in Carrero's complaint, that 745 ILCS 10/6-104(a) does not apply to Carrero's claims. No other arguments under the Tort Immunity Act are presently before the Court, and the Court will not address them here.

In any case, immunity under the Tort Immunity Act is an affirmative defense. *Sablik v. Cnty. of De Kalb*, 2019 IL App (2d) 190293, ¶ 12, 163 N.E.3d 181, 185 (Ill. App. 2 Dist. 2019). "The Seventh Circuit has repeatedly cautioned that, because 'immunity defense[s] usually depend[ ] on the facts of the case, dismissal at the pleading stage is inappropriate.'" *Hayes v. Bd. of Educ. of City of Chicago*, 629 F. Supp. 3d 816, 825 (N.D. Ill. 2022) (Kness, J.) (citation omitted). The City has not shown that applying an affirmative defense to dismiss Carrero's claim would be proper at this stage. For instance, further factual development is required to determine the nature of the Policy at issue, the employee (or employees) involved in rejecting Carrero's application, and that employee's reasons for doing so. As such, the Court denies the City's motion to dismiss under the Tort Immunity Act.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part the City's motion to dismiss [36]. Specifically, the Court: (1) denies the City's motion to dismiss Count I; (2) grants the City's motion to dismiss Count II and dismisses Count II without prejudice; (3) grants the City's motion to dismiss Count III and dismisses Count III with prejudice; (4) denies the City's motion to dismiss

Count IV; (5) denies the City's motion to dismiss Counts V and VI; and (6) denies the City's motion to dismiss Carrero's damages claims under the Illinois Tort Immunity Act.

Because this is the first opinion addressing the merits of Carrero's claims, he is granted leave to amend his complaint within 30 days if he has a good faith basis for believing he can cure the pleading deficiencies of his equal protection claims in Count II.

**IT IS SO ORDERED.**

Date: 1/2/2024

Entered:

_____

SHARON JOHNSON COLEMAN
United States District Judge